OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



September 1, 1999

The Honorable David Dewhurst
Commissioner
Texas General Land Office
1700 North Congress Avenue
Austin, Texas 78701-1495

Opinion No. JC-0106

Re: Whether the movement of a structure from one location to another location on the piece of property constitutes a "specific improvement or repair" to the property for purposes of a tax abatement agreement under the Property Redevelopment and Tax Abatement Act, chapter 312 of the Tax Code (RQ-0038)

Dear Commissioner Dewhurst:

The Property Redevelopment and Tax Abatement Act, chapter 312 of the Tax Code, allows a local taxing unit to enter into a tax abatement agreement with an owner of property located in a reinvestment zone on the condition that the property owner "make specific improvements or repairs to the property." TEX. TAX CODE ANN. § 312.204(a) (Vernon 1992). You ask whether the movement of a structure from one location on a piece of property to another location on the property constitutes a "specific improvement or repair" to the property for purposes of the Act.

You tell us that local taxing units wish to offer incentives for property owners to remove structures from public beaches. The Open Beaches Act declares it to be the policy of the state that the public have "free and unrestricted right of ingress and egress" to and from public beaches. TEX. NAT. RES. CODE ANN. § 61.011(a) (Vernon Supp. 1999). "It is an offense against the public policy of this state for any person to create, erect, or construct any obstruction, barrier, or restraint that will interfere with the free and unrestricted right of the public . . . to enter or to leave any public beach or to use any public beach . . . ." Id. § 61.013(a). The Attorney General or any county attorney, district attorney, or criminal district attorney may file suit to remove any barrier to the public's right to access and use a public beach. Id. § 61.018.

Generally, the area constituting a public beach extends from the line of mean low tide to the line of vegetation bordering the Gulf of Mexico. Id. § 61.001(8). You explain that some structures have come to lie on public beaches because of erosion of the shoreline: "The shoreline of the Gulf of Mexico in many coastal communities has been moving landward, and some homes that were once landward of the public beach are now on it." Letter from Honorable David Dewhurst, Land Commissioner, to Honorable John Cornyn, Attorney General (Mar. 8, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]; see also Feinman v. State, 717 S.W.2d 106, 111 (Tex.

App.–Houston [1st Dist.] 1986, writ ref'd n.r.e.) (holding that Open Beaches Act easement to public beach is a rolling easement that moves if the vegetation line moves). These structures, you say, interfere with the public's access to the beaches. You recognize that the property owners may be compelled under the Open Beaches Act to remove the structures. But, you tell us, local governments would rather offer the property owners a tax incentive to move the structures voluntarily.

The Property Redevelopment and Tax Abatement Act, chapter 312 of the Tax Code, allows a local taxing unit to enter into a tax abatement agreement with the owner of taxable real property located in a reinvestment zone. TEX. TAX CODE ANN. §§ 312.204, .206, .402 (Vernon 1992 & Supp. 1999). The property must be located in a reinvestment zone that has been properly designated as such by the local government. *See id.* §§ 312.201 (city designation of reinvestment zone); 312.2011 (enterprise zone is reinvestment zone); 312.202 (criteria for reinvestment zone); 312.401 (county designation of reinvestment zone).

The criteria for designating a county reinvestment zone require a finding that the designation would enhance the economic development of the county, and not merely benefit the property owner: "The commissioners court may not designate an area as a reinvestment zone until it holds a public hearing on the designation and finds that the designation would contribute to the retention or expansion of primary employment or would attract major investment in the zone that would be a benefit to the property to be included in the zone *and* would contribute to the economic development of the county." TEX. TAX CODE ANN. § 312.401(b) (Vernon 1992) (emphasis added).

The criteria for designating a municipal reinvestment zone similarly encompass the goal of economic development and other benefits for the municipality:

> (a) To be designated as a reinvestment zone under this sub-chapter, an area must:
>
> (1) substantially arrest or impair the sound growth of the municipality creating the zone, retard the provision of housing accommodations, or constitute an economic or social liability and be a menace to the public health, safety, morals, or welfare in its present condition and use because of the presence of:
>
> (A) a substantial number of substandard, slum, deteriorated, or deteriorating structures;
>
> (B) the predominance of defective or inadequate sidewalks or streets;
>
> (C) faulty size, adequacy, accessibility, or usefulness of lots;

> (D)    unsanitary or unsafe conditions;
>
> (E)    the deterioration of site or other improvements;
>
> (F)    tax or special assessment delinquency exceeding the fair value of the land;
>
> (G)    defective or unusual conditions of title;
>
> (H)    conditions that endanger life or property by fire or other cause; or
>
> (I)    any combination of these factors;
>
> . . . .
>
> (5) encompass signs, billboards, or other outdoor advertising structures designated by the governing body of the municipality for relocation, reconstruction, or removal for the purpose of enhancing the physical environment of the municipality, which the legislature declares to be a public purpose; or
>
> (6) be reasonably likely as a result of the designation to contribute to the retention or expansion of primary employment or to attract major investment in the zone that would be a benefit to the property and that would contribute to the economic development of the municipality.

*Id.* § 312.202(a). "The governing body [of a municipality] may not adopt an ordinance designating an area as a reinvestment zone until the governing body has held a public hearing on the designation and has found that the improvements sought are feasible and practical and would be a benefit to the land to be included in the zone and to the municipality after the expiration of [a tax abatement agreement]." *Id.* § 312.201(d) (Vernon Supp. 1999).

For property that is within a reinvestment zone, a tax abatement agreement must be made "on the condition that the owner of the property make specific improvements or repairs to the property." *Id.* § 312.204 (Vernon 1992). You ask whether the movement of a structure from one location on a piece of property to another location on the property constitutes a "specific improvement or repair" to the property for purposes of the Act. We do not know whether the property about which you ask is within a reinvestment zone or whether it would qualify for inclusion in a reinvestment zone. Moreover, whether a particular improvement or repair is consistent with chapter 312 involves questions of fact that cannot be resolved in an attorney general opinion. Thus, we do not determine whether a tax abatement agreement is possible for the property you describe. Instead, we address

your question only as a matter of statutory construction: whether moving a structure from one location to another is an "improvement" or "repair" within the meaning of section 312.204 of the Tax Code.

Chapter 312 does not define "improvement" or "repair." Thus, we begin by looking at the ordinary definitions of the terms. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). An "improvement" in the most general sense is "[t]he turning of a thing to profit or good account; profitable management or use; making the most of a thing for one's own profit; realization of the profits of anything." VII THE OXFORD ENGLISH DICTIONARY 750 (2d ed. 1989). When used more specifically in reference to real property, the term also includes buildings and other permanent structures attached to land:

> **Improvement.** A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset.

BLACK'S LAW DICTIONARY 757 (6th ed. 1990); *see also* VII THE OXFORD ENGLISH DICTIONARY 751 (2d ed. 1989) ("A piece of land improved or rendered more profitable by inclosure, cultivation, the erection of buildings, etc. . . . [T]he buildings, fences, etc., themselves.").

As the term "improvement" is understood in the general sense, almost any endeavor that makes the property or the structures on it better than they were would constitute an improvement. Moving a structure from one location on a piece of property to another location on the property might constitute an improvement to the property overall, or to the specific structure itself, by enhancing its value, extending its useful life, or otherwise making its condition better. A structure placed on a formerly vacant part of the property certainly is an improvement, in the more narrow sense, to that part of the property. Whether the relocation of a structure constitutes an improvement to property must be determined, however, on the facts of the particular case.

A "repair" is "[t]he act of restoring to a sound or unimpaired condition" or the "[r]estoration of some material thing or structure by the renewal of decayed or worn out parts, by refixing what has become loose or detached." XIII THE OXFORD ENGLISH DICTIONARY 627 (2d ed. 1989). "The word 'repair' contemplates an existing structure or thing which has become imperfect, and means to supply in the original existing structure that which is lost or destroyed, and thereby restore it to the condition in which it originally existed, or as near as may be." BLACK'S LAW DICTIONARY 1298 (6th ed. 1990).

You tell us that the tax abatements would require the property owners to *move* structures, not necessarily fix or restore them. While the act of moving the structures would not constitute a "repair" in the ordinary sense, the agreement to move the structures might encompass fixing or restoring them to a good condition once they are in their new location. Thus, an agreement to remove a structure and relocate it on the property might, depending again upon the facts, constitute a repair to property in the ordinary sense.

But we must also consider what constitutes an improvement or repair in the context of chapter 312. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). Chapter 312 was enacted in anticipation of an amendment to the Texas Constitution, ratified by voters in 1981, which permits the legislature by general law to authorize local taxing units "to grant exemptions or other relief from ad valorem taxes on property located in a reinvestment zone *for the purpose of encouraging development or redevelopment and improvement of the property*." TEX. CONST. art. VIII, § 1-g (emphasis added). Pursuant to this constitutional authority, chapter 312 authorizes local taxing units to enter into tax abatement agreements with owners of property located in reinvestment zones.

Chapter 312 requires taxing units to adopt guidelines and criteria for tax agreements before entering into any such agreement. TEX. TAX CODE ANN. §§ 312.002(a), .401(a) (Vernon 1992 & Supp. 1999). The substance of the criteria governing tax abatement agreements is a matter within the discretion of the local entity making the agreement. Tex. Att'y Gen. Op. No. DM-456 (1997) at 6. Chapter 312 imposes two limitations on the commissioners court discretion. First, the property owner must agree to make specific improvements and repairs to the property. Second, "improvements that form the basis of a tax abatement agreement must be consistent with the purpose of the reinvestment zone designation." *Id.*

Accordingly, not only must the subject of a tax abatement agreement be an improvement or repair in the ordinary sense, it must also serve the economic development purposes of the reinvestment zone, and benefit the public as well as the property owner. You believe that moving a structure from a public beach to another location on the same property would constitute an improvement for the purposes of chapter 312 because it would:

> 1) reduce the possibility that the structure would be damaged or lost in a storm; 2) preserve the property as property tax base (which would be lost if destroyed or condemned); 3) make the entire property more marketable; and 4) improve the public's access to and use of the public beach.

Request Letter, *supra*, at 2.

We find nothing in chapter 312 that would preclude, as a matter of law, a local government from granting a tax abatement to a property owner in return for the owner's agreement to move a structure from a public beach to another part of the owner's property. However, whether any particular endeavor would actually improve or repair property in the ordinary sense is a

determination that must be made on the facts of that endeavor. Likewise, whether the improvement or repair is consistent with the purpose of the reinvestment zone designation, a designation that must benefit the public as well as the property owner, depends upon the particular facts at issue. Consequently, we do not determine whether a tax abatement agreement is possible for any specific property. Such determinations are for local governmental bodies to make in the good faith exercise of their discretion.

## S U M M A R Y

The movement of a structure from one location on a piece of property in a reinvestment zone to another location on the property may constitute a "specific improvement or repair" to the property for purposes of a tax abatement agreement under Property Redevelopment and Tax Abatement Act, chapter 312 of the Tax Code, if it improves or repairs the property in the ordinary sense and if the improvement or repair is consistent with the purpose of the reinvestment zone designation.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Barbara Griffin
Assistant Attorney General - Opinion Committee